We'll hear argument next in Case No. 15-145, Husky Int'l Electronics v. Ritz. Mr. Boretsky. Mr. Chief Justice, and may it please the Court, Congress amended the discharge bar in 1978 to add actual fraud as an additional ground for barring discharge. That amendment must be given meaning. Our interpretation is the only one that does so. Consistent with the common law understanding that Congress codified, actual fraud is a term of art that includes a recipient's knowing participation in a deliberate fraudulent transfer. By contrast, the Fifth Circuit's holding that actual fraud invariably requires a misrepresentation makes Congress's amendment superfluous, because it equates actual fraud with the preexisting terms, false pretenses and false representations. Respondent's interpretation is even worse. It merely restates a preexisting scienter requirement, and in any event, Congress could not plausibly have added or actual fraud to the discharge bar in order to modify the previous terms to mean intentional false pretenses or an intentional false representation. Roberts. You'd acknowledge, wouldn't you, that if the language we used in Field against Manns is applicable, or if we meant it, that you lose some degree of reliance is required to satisfy the element of causation inherent in the phrase obtained by? I don't think that language is applicable here, because that language has to be in the field. Roberts. No, no, I understand, and I understand your argument there. But if it is, if we think that language does apply across the board, you certainly lose. Yes, if you believe that obtained by invariably requires reliance, but it does not. The language in Field was in the context of a misrepresentation case. What obtained by requires is causation. In the context of a fraudulent transfer, where the recipient knowingly participates in a deliberate fraudulent transfer, centuries of common law establish that he commits actual fraud himself. He, therefore, obtains the property by actual fraud. That's a settlement. You would have to show down the road that the money was obtained by Ritz, because as I understand it, it was transferred from the first company to a bunch of other companies, not to Mr. Ritz himself. That's correct, Justice Ginsburg. Down the road, we would need to show that our State law veil-piercing theory is correct. That, however, is not the basis on which the Fifth Circuit rejected our claim. The Fifth Circuit rejected our claim on the sole ground that it thought actual fraud invariably requires a misrepresentation. Would you have to show under State law not only the veil-piercing, that there is veil-piercing, but that there is fraud under State law? Correct. We would need to show two things under State law. First of all, that Ritz orchestrated a fraudulent transfer by transferring assets from Chrysalis to his other entities in order to hinder creditors. Second of all, we would have to show that he perpetrated that fraud for his own personal benefit, which is what would then allow us to pierce the corporate veil and hold him personally liable for the fraud that he committed. Are you piercing the corporate veil as to the first company or as to the transferee companies? We are piercing the – it could be either, but I think we are piercing the veil as to the transferee companies because we are pursuing this on a recipient theory. Right. Because I understood your whole brief to be pursuing this on a recipient theory. Correct. And your brief, you know, makes some sense as that. But then when you look back to your complaint, it suggests that the veil-piercing actually was attempted as to the transferor company, which doesn't do you any good under your theory. So the complaint fully spells out all of the details related to the transfers, and generally, this is a Joint Appendix 97, asks for avoidance of all fraudulent transfers to the extent necessary to satisfy plaintiff's claims. Throughout the litigation, the claims were then pursued on a transferee theory. The Fifth Circuit understood the claim that way and rejected it solely because, again, the lack of a misrepresentation. The problem with the Fifth Circuit's interpretation is that it nullifies Congress's amendment, or actual fraud. It makes it meaningless simply by restating the previous terms, false pretensors or false representations. When Congress added or actual fraud to the discharge bar, it was legislating against the backdrop of hundreds of years of common law usage of that term. For centuries, courts had used actual fraud to refer to fraudulent transfers as discharges.  Breyer. I know that, and I'm rather slightly self-regarding statement, but, I mean, 20, 30 years ago, I had a case on fraudulent conveyance where my law clerk looked up every single case in sight, poor man, and we went back to Queen Elizabeth and I wrote down what I thought it was. Well, obviously, that affects my thinking on this, and I don't have any way of knowing that it's still what I wrote was correct. It's called Bernazas, if you want to look at it, but not now. The point of the classical examples that we found, let's take one of them, is a person knowing that he has creditors, he has to know that he has creditors, maybe he knows of the insolvency, and he transfers money to his wife rather than to the creditors. And she knows it, too. And this is a way of getting the money away. That's a fraud classical, right? Yes. Okay. So now when I look at the statute, I see these words, to the extent that it's a debt obtained by actual fraud. Now, wait, whose debt are we talking about? We're talking about creditor C, who was a creditor of the transferor. And it's the transferee, the wife, who obtained the debt. She's the one who's got the money. And so it sounds like the bankruptcy statute is saying she's the one in her bankruptcy. Now, that can't be right. And so how is this supposed to work? I mean, the obvious question to ask you is the question, if it doesn't mean representation, give me one example of what it does mean. Well, I just gave you one, and as you can see, I'm quite confused as to how that works, and I haven't seen another one. I think the way your hypothetical works, Justice Breyer, is that the recipient, in that instance, the wife, commits actual fraud herself. Yes. And when she commits actual fraud herself, she incurs her own debt for the fraud. The problem with her is she is not trying to deceive a creditor of hers. She is not trying to deceive her creditor. It's the transferor whose creditors are being fraudulently deceived. True. But if she is conspiring, in effect, with the transferor, she is facilitating his fraud. Breyer, so you are saying in a bankruptcy of the wife, this is money obtained by fraud, which it is, and the fact that she's helped him defraud his creditors is sufficient to bring us under the 1924 Massachusetts statute, which is copied from the UCC, which ultimately is traced back to the statute of Elizabeth. That's how it works? Yes. Thank you. She commits fraud. In the course of committing fraud, she obtains money. She then has a debt for that money, and it's nondischargeable under 523a2a. That understanding is consistent with the common law understanding of actual fraud, which is what Congress codified in order to add an additional ground for discharge. The legislative history of the 1978 Code makes clear that Congress was adding an additional ground for discharge, so it was expanding or an additional ground for barring discharge, excuse me. So it was expanding the scope of the discharge bar. It does make the language false pretenses or false representations completely superfluous, yes? It does, but the key point here is that it also expands upon that language, whereas the Fifth Circuit's interpretation also makes false pretenses and false representations superfluous without giving Congress's amendment any additional work to do. So, too, for Respondent's interpretation, which, first of all, merely restates a preexisting scienter requirement, so it gives the amendment no additional broadening scope, and, second of all, is grammatically indefensible because or actual fraud is not a narrowing phrase that modifies what comes before it. Congress could, perhaps, have simply replaced false pretenses and false representations with or actual fraud, but that might have led to an unwarranted negative inference by the deletion of terms, false pretenses and false representations, that had been in the statute for a very long time. Ginsburg. So you would like the Court to hold that actual fraud means something other than it includes things that were not already included, period, and then whatever other issues would be to be resolved on remand? That's correct, Justice Ginsburg. With respect to Respondent's interpretation, first of all, as we established in our reply brief, false pretenses and false representations already required intentional fraud. No court had interpreted those terms in the discharge bar before 1978 to apply to innocent conduct, and so there was no basis to think that when Congress added or actual fraud to the statute, it was simply restating an existing rule. This Court has in the past refused to interpret congressional amendments simply to restate existing rules when there is a plausible, indeed, settled in light of the common law understanding like the one that we offer that gives the amendment an additional function. The other problem with Respondent's interpretation, of course, is grammatical, or is a disjunctive term that expands on what comes before. It's not a term that limits what comes before. And moreover, actual fraud is a noun phrase that represents both conduct, fraud, and the way in which it is carried out intentionally. It's not simply a mens rea. Roberts. Why did Congress take the term fraud out of the Bankruptcy Act in 1903? The legislative history doesn't tell us why Congress did that. What we do know is that when Congress took out that term in 1903 at least one legislator expressed concern that this was leaving a category of frauds outside the discharge bar, and that that was a mistake, because the purpose of the discharge bar has long been to afford relief only for the honest but unfortunate debtor and not to allow the bankruptcy code to be used for an engine for fraud. In 1978, Congress closed that gap by adding the additional ground for discharge back in. Roberts. So all you've got in 1903 is one legislator? Yes. We have one legislator expressing the concern. This is a big change. This isn't necessarily hostile to your position, but it's kind of a big change to take fraud out of a bankruptcy statute, and nobody seems to know why. Nobody seems to know why. We don't dispute, of course, that typically, most commonly, frauds will involve misrepresentations. And so those frauds were still covered. And of course, as a result of Congress's drafting, there are other discharge bars that apply to narrower types of — narrow and different types of fraud. And so Congress didn't completely forget about fraud in 1903. It did, however, take it out of this particular discharge bar over the concern expressed by at least one legislator. In the interim period between 1903 and 1978, courts did note that the discharge bar in effect at that time covered only false pretenses and false representations and that there was, in fact, a gap. And then in 1978, as part of a comprehensive overhaul of the Bankruptcy Code, Congress closed that gap. And so we submit that this Court should interpret the discharge bar in a way that gives full effect to Congress's amendment. Our interpretation is consistent with the plain common-law meaning of the words actual fraud. It does not require grammatical distortions, and it accords with the purpose of the discharge bar, which is, again, to provide relief only for honest debtors and not to allow the Bankruptcy Code to be used as an engine for fraud in the way that occurred in this case. Kagan. Ms. Murphy points out that there are lots of other provisions in 523A which have a lot of overlap on this provision on your reading, and then also the fraudulent conveyance provisions, if you would talk a little bit about those. Sure. Let me address the fraudulent conveyance provisions first. The fraudulent conveyance provisions are targeted at the transferor, not the transferee. And so our reading of 523 complements those provisions rather than conflicts with them. 727 provides that there is no discharge at all if a debtor transfers assets to hinder creditors within a year of the bankruptcy filing. 548 allows the trustee to pursue claims for transfers within two years. But nothing about our reading of 523 is inconsistent with that. It simply provides that in addition to those things, creditors may pursue fraud claims where there's a fraudulent transfer against the transferee, and if the transferee ends up in a double bankruptcy situation, so to speak, then at that point, 523 complements the other provisions. With respect to the other discharge bars that address fraud, there is inevitably some overlap among these discharge bars. Partly that's a result of Congress's drafting. Congress chose to use the word fraud in multiple places, and so you're going to have overlap as a result of that. Partly it is a result of a belt-and-suspenders approach to effectuate the policy of ensuring, again, that fraudulent debtors don't get away with their fraud. Our reading, however, does not lead to any more overlap than Respondent's reading does. Either way, there's going to be overlap between the false pretenses and false representations type of fraud, which Respondent thinks A2A is limited to, and fiduciary fraud, for example, is a false pretense or a false representation. Breyer, my question is better asked. No, no, you go, I'll ask. I don't want to take your time. The overlap is inevitable. That's not a reason to prefer Respondent's interpretation when our interpretation also gives Congress's amendment additional work to do. Briefly, with respect to A6, it's not at all clear that this conduct would fit within A6, which has a higher standard willful and malicious injury, not just reckless disregard, which is sufficient to establish actual fraud. If I may, I'll reserve the remainder of my time. Roberts. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. The court of appeals erred in holding that section 523A2A always requires proof of an intentional misrepresentation in order to prove actual fraud. There are three main reasons why Petitioner and the government are right about our interpretation of section 523A2A. The first is that this Court has said many times that when Congress uses a term that has an established comma law meaning, courts should give it that meaning when it's used in a statute. For centuries, the term actual fraud has been used at comma law to refer to schemes that are intent to be, where property is transferred with the intent to hinder, delay, or defraud a creditor. There's no reason to give that text any different meaning in section 523A2A. The second is that our view is the only thing that the only interpretation that gives any meaning to the 1978 amendment. And the third is that our view is consistent with Congress's overarching purpose in the Bankruptcy Code that dishonest creditors, excuse me, dishonest debtors not be permitted to use the code to get rid of their debts. Now, Respondent offers a competing textual interpretation of the term, of the phrase or actual fraud. I mean, Petitioner has explained well why that interpretation doesn't make any sense as a grammatical matter. It also wouldn't give any effect to the 1978 amendment. Petitioner also relies on the word obtained, which Justice Breyer was referring to as well. Excuse me, Respondent does. Respondent suggests that our interpretation doesn't give any meaning to the word obtained if obtained doesn't mean that a false representation was directed at a creditor. But under our view, the word obtained actually does two things. The first thing it does is the work that this Court described it as doing in Cohen v. De La Cruz, which is it requires a causal connection between the fraudulent act and the debtor's acquisition of or possession of the property or money. But the second thing it does in the fraudulent transfer context specifically is it sort of screens out the innocent recipient of a fraudulent transfer. And so if Congress had instead used the phrase obtained as a result of actual fraud, then arguably that could have brought in an innocent recipient of a fraudulent transfer, because as a result, I would suggest that you focus on the transaction that caused the transfer of property. But obtained by really focuses on the action of the recipient. And so it really just gets at the recipient's mental state and fraudulent. Breyer, that's the part, you see, it's still gnawing at me. I wish you had read this case, because when we went through it, this sentence, fraudulent, and I wouldn't raise this except the only example other than the misrepresentation that you've come up with, is the fraudulent conveyance. And what I said after reading all of it, fraudulent conveyance law permits creditors to recover money that a debtor has disposed of in a manner similar, and then I described three paradigm cases. All right. So what they're thinking of is a transferor has creditors. And what he did well before going into bankruptcy, but he knew he was likely to be absolved, the transferor transfers money to his friends, rather than the creditors, to a place that it's hard to get at, you know, to somebody who's going to all right. Now, looking at this statute, it seems to me that the person whose debt is going to survive bankruptcy is not the transferor, because normally fraudulent conveyance law permitted his bankruptcy judge to claw back the money. But that's not what you're talking about. You're talking about the transferee. And you're saying here the transferee's participation in the transferor's effort to defraud his creditor is something that also survives. And at that point, I ask, of all the bad things that people can do that might survive, why in heaven's name do they pick on this one in respect to the transferee? I mean, after all, maybe the transferee robbed a bank. I mean, there are all kinds of bad things that might survive and don't. So something's wrong with my analysis, as you understand it, and that's what I've got to get into my head. Well, see, there are all kinds of debts that do survive a bankruptcy, including the debt for the transferor. But have I got what I'm talking about right in terms of the debt? Well, so I think it's important to realize there are two distinct debts. There's the original debtor. There's the original debt from the creditor to debtor 1. Debtor 1 transfers his property to a friend. If the friend, with the intent to defraud his creditor, if the friend shares that intent, then the State law or some Federal law gives the creditor a cause of action to go after the recipient, to go after the friend. If that is successful, then there's a new debt that's created to the creditor from the friend. And that's the debt we're talking about here. With respect to why that wouldn't be dischargeable when, if you're outside the time limits that are covered by 548 or 727, the transferors wouldn't, it's because the transferee, the recipient, is the person who ends up with the money or the property. So the second overarching purpose of the Bankruptcy Code is to let creditors get their money back when they can. And so it makes sense that Congress would have wanted to give maybe a stronger remedy against the person who actually has the stuff at the end of the day. And so I think that's why our reading is consistent with the purpose of the Code in general. Roberts, is the veil piercing that's going on here with respect to Chrysalis as well, or just the companies to which Chrysalis' assets were shifted? Well, you know, Mr. Dvoretsky suggested that it's with respect to the recipient corporations. I think that there are many questions about the State law cause of action that would need to be resolved on remand if the Court were to reverse. I would just point out on the final page of our brief, we have the text of the veil piercing, the Texas veil piercing statute. And in order to prevail under that statute, the Petitioner is going to have to prove, it says, an actual fraud for the direct personal benefit of the holder. And so they're basically going to have to prove that Mr. Ritz obtained money or property by actual fraud in order to prevail under the State law cause of action. Roberts, so how does that work in the bankruptcy case? We say this debt can't be discharged, but maybe it will turn out that it could have turned in, depending on how the State law claim goes? So what happens is there's an adversary proceeding in the bankruptcy, in the larger bankruptcy proceeding itself. And so instead of having parallel litigation in State court, that action was stayed when the bankruptcy petition was filed, and basically all the action is transferred to the bankruptcy court. So the bankruptcy court will decide the question under State law? Yes. Yes. And the bankruptcy court held that it wasn't satisfied in this case because the bankruptcy court viewed the Texas law as requiring a misrepresentation, and also as 523a2a as requiring a misrepresentation. And so I think there are a lot of things that would need to be sorted out about the State law cause of action on remand. I just want to say one last thing on redundancy, if I could. There's a couple of specific provisions in 523 that the Respondent suggests are redundant. One of them is 523a4, and Respondent suggests that that's the one that covers fraud in a fiduciary capacity. It suggests that if we're correct, that anything that would be covered by a4 would also be covered by 523a2a. But that's not correct, because 523a4 does not, is not limited to situations in which money or property was obtained by fraud, and so it could cover a fraud where a fiduciary caused money or property to go to a third party. And so that would be covered by a4, and it wouldn't be covered by a2a. And just in general, one last thing on redundancy, I think Congress is trying to be And so Congress used broad words like fraud, and instead of sitting down and thinking and trying to think up every different fraudulent scheme that people might come up with, Congress just wanted to be comprehensive and say fraud. And it used the same word, fraud, in multiple places. That's going to create overlap, but that's a feature of the system and not a flaw in the system. Thank you. Roberts. Thank you, counsel. Ms. Murphy. Murphy. Mr. Chief Justice, and may it please the Court, section 523a2 applies to a specific type of debt, a debt for something with which the debtor has fraudulently induced the creditor to part. That conclusion follows from the text of the statute for at least three reasons. First, because the statute expressly says that the debt has to be for something obtained by the debtor's conduct. Second, because the statute explicitly and repeatedly talks about forms of conduct where the debtor obtains something by inducing detrimental reliance. And third, because the statute makes clear on its face that it's the creditor whose detrimental reliance has to be induced. Because section 523a2 applies only when the debtor induces the creditor to part with something, it does not apply to a debt for receiving money through a fraudulent conveyance. That may be a form of fraud. It may well be a form of actual fraud, but it's not a form of fraud that gives rise to a debt that is subject to exception from discharge under 523a2. Ginsburg. What would Congress have to write to cover a scheme like this to say it's not covered under a2? Sure. I think the most natural way to do it would be by saying fraudulent conveyance or fraudulent transfer or a fraud that involves intent to delay, defraud or hinder a creditor, those are the terms that Congress uses when it's legislating about fraudulent conveyance, which Congress has done repeatedly and pervasively for 150 years. If you look at the fraudulent conveyance statutes, not a single one of them uses this term, actual fraud. So this is not a term that's associated particularly with the scheme. Breyer. Well, you have 1924 Massachusetts statute copied from the Uniform Commercial Code, which in referring to fraudulent conveyance, in section 7, uses these words. Each conveyance made with actual intent as distinguished from intent presumed in law to, dah, dah, dah, hinder, delay or defraud present or future creditors is fraudulent. Sure. I grant they did use the word actual intent rather than actual intent to hinder, delay, defraud, and then they said it is fraudulent, but that sounds an awful lot like the words actual fraud. And to be clear, we don't dispute that fraudulent conveyance is a form of actual fraud. It's just not a form of actual fraud that falls within the scope of this particular exception, because this exception says more than just the words actual fraud. It says that you have to have a debt for money, property, services or credit to the creditor to justify false pretenses, false representations of actual fraud. Breyer, The friend who obtained the $40,000 which the friend knew was owed to the creditor of the transferor has obtained money, money through, it is a debt, she owes the debt. She now owes the debt to the creditors of the transferor, because she has the $40,000 knowing that it's wrongly conveyed. So she now owes the debt to the creditors, and her debt was obtained by actual fraud. I don't think it was. Because? Because she didn't use the fraud to obtain the money. And this gets back to what you were talking about when you were kind of giving the hypothetical. The fraud in a fraudulent conveyance is the first debtor concealing or misrepresenting the nature of the conveyance to the creditor. It doesn't say, sure. Kennedy, We're not limited to fraudulent conveyances here. You want to read the statute and say something like, for money obtained from the innocent party in the first instance by, but fraud can continue through a whole chain. And if it continues through the whole chain, the person on the end of the chain may have never had any relation with the innocent party at all. Well, I think that what you need to have the fraud that comes within A-2 is inducement. Now, the inducement, the fraudulent inducement, it does not have to be direct. It's not our position that, you know, unless the misstatement is made expressly to the creditor, the debt doesn't count. You can have, you know, a misstatement that you cause to be made, that the statute actually uses that language, causing a misrepresentation to be made, that the victim at the end, the creditor, ultimately relies upon. So we're not saying there has to be a direct relationship here. Sotomayor, I'm totally confused, because I think I was following you up until the last statement. Okay. All right? I was following you up to when you said that it has to be a debt you obtain by fraud from the person. Yes. Whether I agree with you or not, that's a different issue, because I'm not sure that you fully answered Justice Breyer. But I don't understand where the inducement comes into this. Why did you can commit fraud against a person directly in a variety of different ways that don't require a misrepresentation? And we know that actual fraud doesn't, as a matter of fact, require a misrepresentation. Well, as far as I can tell, and Petitioner hasn't suggested otherwise, there's really only two forms of fraud here. There's misrepresentation or fraudulent conveyance. They really haven't pointed to anything else. So, you know, the question I think really is, is fraudulent conveyance supposed to be in this statute? And in this particular statute, I think fraudulent conveyance sticks out like a sore thumb. Well, you just said you're not contesting that fraudulent conveyance is a form of actual fraud. Is that right? When it's done with intent, you know, the necessary intent to make it actual fraud. But, yes, that's right. Right. So, now, this language, I mean, the language just seems a lot more simple than you are making it, because you add inducement to the language, you add from the creditor to the language, but the language doesn't say any of those things. It just says, is there a debt, and we know that there's a debt here, the debt is for money. The language says, well, what has to be true of that money? It has to be obtained by actual fraud. And here, the money, the allegation is, was obtained by fraudulent concealment. So whether or not the creditor has been induced and whether or not the money has come from the creditor seems to be irrelevant under this very simple statutory phrase. I think that there's, you know, two problems with that in our view. First, I don't agree that the fraud is how you obtained the money. You obtained money, and by doing so, helped someone else commit a fraud on their creditor. But you did not use fraud to obtain the money in a fraudulent conveyance. You have been a participant in a fraud on someone else. So I think even excepting the money is not how you obtained the money. Sotomayor, that brings out every conspiracy theory that exists. I mean, if you're helping someone by accepting the money, you're committing a crime. Right. But this statute says more. It says that you have to obtain the money that is what gives rise to the debt. So, you know, it's a very different. Sotomayor, it's a conspiracy theory that says you don't have to commit every act. Sure, but the question is, the transferee obtains the money by way of the fraudulent conveyance, right? How else does the transferee obtain the money? The transferee obtains the money through the transferor that decides to give them the money. Through a fraudulent conveyance. The fraud occurs on the back end. Because of the transfer, there is then fraud when the debtor effectively, you know, either conceals the transaction, that's the fraud, or conceals the true nature of the transaction. Breyer. What about Mr. Ponzi's cousin, who, in fact, had nothing to do with any of the misrepresentations, but knowing the entire truth says, Ponzi, my friend, when you get those bags of cash, hide them under my bed. All right? Now, he himself has not, in fact, lied to anybody or made any misrepresentations, but he's part of the big scheme. And I take it we would say that that money under the bed has been obtained by actual fraud, hasn't it? Not by him. Oh, so you're going to get more proof. I'm not quite sure in your hypothetical where, you know, where, I mean, the person Oh, there was, I mean, you know, there are dozens and dozens of cases where people do have misrepresentations. There's no doubt there's a misrepresentation in this thing. But after all, not every participant in the great scheme himself lies. Sure, but. And those people, I would think, you would expect to have fall within, since they're part of the big Ponzi scheme, they would be right within this statute and their debts would not be forgiven. They weren't the ones who lied. Well, A2, A2, it's not a conspiracy statute. And Petitioner themselves, they offer as their example something that doesn't fall within A2, aiding and abetting somebody else's fraud. So they say that this is one of the ways in which this statute, you know, they have to give some theories as to what narrows this statute so that it doesn't completely swallow the additional fraud provisions that Congress has added here, and that's part of their theory, is that, you know, you do have to have used the fraud to obtain it yourself. But I think that part of it is that you can't just look at the term actual fraud in isolation, just as the other side agrees that you can't look at the term false representation in isolation, because they assume that false representation means fraudulent misrepresentation. That's not what the statute says, and that's not what false representation means at common law. At common law, false representation includes negligent misrepresentation and innocent misrepresentation. If you look at the restatement in 1976, it expressly says that. So does Prosser. So they're agreeing that you can't just take these terms and pluck them out of the statute and say, oh, what did it mean at common law? That's the end of the analysis. The question is, what do these terms mean in this statute? And when you look at this statute, Congress put the term actual fraud next to a bunch of terms that by their nature speak of inducement. Kagan. But it would be a very strange thing, Ms. Murphy, if I agreed with you, if I were Congress, and I said I want to make it really clear that this should be only intentional false pretenses and false representation. There are a gazillion ways to do that, but starting with the simple one, saying intentional false pretenses and an intentional false representation. But the one thing I wouldn't do, I think, is to say actual fraud, because actual fraud is not synonymous with intent. Actual fraud refers to conduct that's done with a certain kind of intent. And that conduct, as you just said, includes more than false representation and false pretenses. So I wouldn't use a term that had to do with conduct just to state a mens rea requirement. So here's why I have two responses as to why I don't think it's actually that unusual in this context. I mean, first of all, this isn't a theory that we concocted after the fact. The sponsors of the bill, when they introduced this legislation on the House and Senate floor, both of the key sponsors said what subsection A was intended to do. And they said, look, if I have that case right, that case is actually a case about a fraudulent conveyance. It's not a case about a false representation. So they said, look at this case. It's a case about a fraudulent conveyance that suggests that there's more fraud in the world than just misrepresentations, and we want to make clear that that's supposed to be a part of this. That's ignoring the second clause. And that's one-half of what the sponsors said, because they didn't say, we intend this to codify Neal v. Clark, period. And Neal v. Clark didn't hold that fraudulent conveyance was something that comes within the scope of the statute. It held that the fraudulent conveyance there did not come within the scope of the statute. It was the case that there's more fraud in the world than just misrepresentations, and we want to make clear that that's not a case about a false representation. Ginsburg, it requires converting or into by, that is, misrepresentation, false pretenses, by actual fraud. I think that's a fair statement, but I think that this case is pretty analogous to the McNally case, where this Court also had the disjunctive or before it in interpreting the mail fraud statute. And in that case, the Court, it was a very similar situation, where you had a statute that was on the books. You had decisions from this Court interpreting that statute, and then Congress added to the statute language that was mirroring the language of this Court's cases. And in that circumstance, the Court said, you know what, we have to look at that language in light of the fact that they took it from our cases. And here, if you look at the cases that they took this language from, they are cases that use actual fraud to distinguish intentional fraud from constructive fraud. They are not cases that use actual fraud to say, oh, here's what kind of fraud counts under this statute, fraudulent conveyance. In fact, the only cases that happen to involve fraudulent conveyance and the term actual fraud are cases where the Court held that the debt did not fall within the scope of the exception to discharge. Ginsburg, do you have any other example in all of the U.S. Code where the word, in a series of words, A or B or C, and or is taken to mean by, and refer not to a discrete category, but modifies the earlier category? I'm not sure I have an example where it would, you know, where it quite works like that, but what I would say is there are many places in the U.S. Code where an item that comes at the end of or later in a list is used to inform the meaning of the word before it. And if you look at Neal v. Clark itself, that's exactly the reasoning the Court employed there. The reason the Court concluded that the only kind of fraud that counted was intentional fraud was because the next item in the list was embezzlement. And the Court said, because embezzlement requires intent, we're going to infer from that term that fraud requires intent as well. So the basic principle that adding language to a statute can inform and limit the It's not extraordinary. It's just an example in common parlance, not in the U.S. Code, where someone would speak along the lines you're saying the statute is written. Sure. There's an example in a statutory construction book of the phrase cats, dogs, or domesticated animals. When you're thinking about that phrase, domesticated animals is the one that tells you cats doesn't include lions and tigers. And it's given in the context of if a veterinarian says, you know, I will treat these three types of animals, it's limiting the one that comes before it. I think another phrase that it came across was highways, bridges, and public sidewalks. You know, public sidewalks is what tells you that bridges doesn't include the one in my backyard. So the third term can be a term that informs the meaning. Now, here, I don't think you have to conclude that that's the only thing actual fraud achieves in this statute in order to accept our reading of the statute. Actual fraud in this statute, you know, the concept of misrepresentation doesn't have to be completely synonymous with the concept of false representation. What you can essentially view actual fraud as doing is putting a thumb on the scale of the broadest conception of misrepresentation possible, even if that's broader than the common law tort of false misrepresentation. So one thing that some courts have said when looking at this statute is that it's not clear that false representation reached future-looking, you know, statements about whether I intend to perform in the future. And some courts have said, well, you know what, we don't need to resolve that debate anymore, because now that the statute says actual fraud, that's good enough to tell us that the kinds of misrepresentations that come within the scope of this statute include any kind of misrepresentation that induces the creditor to part with something, even if it might not technically have qualified as false representation at common law. So I think that there's plenty of ways for this term to do work without having it kind of put this sore thumb into the statute of fraudulent conveyance, which is just nothing like the rest of the terms in this statute. It's nothing like false statements, false representations, false financial statements. All of those types of conduct that this statute has always covered involve inducing the creditor to part with something. And that's what differentiates A-2 from the 18 other exceptions in the statute. This is not the intentional fraud provision. There's plenty of other provisions in the statute that cover forms of intentional fraud, some of them by directly using the word fraud, others like A-6 by covering intentional injuries to property interests. So it's not as if you need to put this remedy into A-2 in order to ensure that if you really do have intentional fraud in the receipt of a fraudulent conveyance, there will be a means of having a debt that's nondischargeable. So I don't know why you'd kind of strain to get it in here where it seems like such a poor fit. And the other thing that I think is worth keeping note of is that Congress has legislated quite specifically on fraudulent conveyance for 150 years. And there are two things that you can note repeatedly when Congress does so. First of all, it uses particular language of fraudulent conveyance. It talks about a fraudulent conveyance or a fraudulent transfer or a transfer made with intent to hinder, delay, or defraud a creditor. But the other thing is that the remedies Congress has created for fraudulent conveyance are not creditor-specific. They are instead consistent with the basic principle of equitable distribution. Under 727A-2, you have a complete bar to discharge, which benefits everybody because no debtor gets a discharge. Under 548A-1 and the other provisions that allow the trustee to void transactions, the money comes back to the estate and then gets distributed equitably to all creditors. Here, instead, you have a creditor who's basically jumping the line and saying, we should get all of this money, even though within the context of the Chrysalis bankruptcy, the trustee did not see fit to try to void these transactions. And there was no attempt by the trustee to void transactions in this bankruptcy either. So you end up with a remedy that is really nothing like the ones that Congress has offered when it is actually legislating clearly on the topic of fraudulent conveyance. Sotomayor, I don't know that that moves me that much. Does that mean that if you're a — if you've accepted a fraudulent amount of money, you get to keep it? Absolutely not. Well, that's what you're saying? No, I'm not, because the trustee's powers allow them to void the transaction and to keep it. But if they choose not to, that still means you get to keep it. Well, that one creditor has undertaken the expense, et cetera. The creditor has the ability to try and get the trustee to void the transaction, and the trustee can void the next transaction on down the line as well. The statutory empowers include, you know, if the recipient then fraudulently conveys away the property, you can keep undoing the transfers until you ultimately get at the property. So there's plenty of ability for the trustee to get at the property without resorting to this. Now, we're not saying that there can never be a creditor-specific remedy for the receipt of a fraudulent conveyance. If, say, you have a trustee who has that debt against the recipient, I think the right thing for them to do is go use the subsection A6 exception, which allows an exception for willful and malicious injury to the property interests of another. And courts have — every court that's looked at that question has said that A6 is an appropriate place for this kind of debt to be subject — accepted from discharge. So you've got courts who have looked at this question and said — Ginsburg. What does it take to show — what is it, the phrase? Malicious or what? Willful and malicious injury? What does it take to show that? So it can be either subjective intent to cause injury, or it can be a substantial certainty that injury will result. There's a bit of dispute below in the courts of appeals about whether an objective substantial certainty that harm will result is sufficient or you need a subjective substantial certainty. I'm not sure at the end of the day that ever is an outcome determinative distinction. But for this case, it makes no difference at all because the Fifth Circuit is a circuit that applies the broader objective test, and applying that objective test here, the These transfers were not made with intent to injure the Petitioner and were not even made with substantial certainty that injury to the Petitioner would result. Breyer. That's your case. And I'm still — as Justice Sotomayor said, it seemed to me there's a — look what you're saying here. The bankrupt or insolvent person transfers the jewels to his wife, okay? And now what this would be saying under their reading is the jewels survive her bankruptcy. And you're quite right that her husband's trustee could have clawed it back before, but he didn't. And so now it went through her bankruptcy. And if it survives, somebody can get it. And maybe the fair thing to do is to do what you do with environmental cases, or you have a bunch of people who are victims and they divide it up, because you're quite right that all of the creditors who might have shared in the jewels are the victims, the creditors of the transferor. But so what? I mean, how does that help you with your basic argument? It just is a different argument that says that this particular creditor shouldn't get all of it. Well, I think it's actually kind of true in every fraudulent conveyance case, because typically the reason why the creditor is trying to get the money for is directly related to inducing the creditors to pay for the jewels. It's absolutely not true in a misrepresentation case. The misrepresentation was made to the creditor. So the creditor, the debt that the creditor is trying to get the money for is directly related to inducing that creditor to part with the money that they want back. So it goes to perhaps 1,000. He lied to 1,000 people. And there are 1,000 victims. And here we have, let's say, 1,000 victims, all those creditors who didn't get the money they should have gotten. I mean, it's the same problem, isn't it? I don't think it is, because in that context you have a creditor-specific injury and a creditor-specific remedy. And I think you need that, too, in the fraudulent conveyance context. So if, for instance, you know, the jewels belonged to one of the creditors, then they're going to go use A6 and get the jewels back. They're not going to have a problem. A6 is available for that intentional injury to their property interest. So you don't need it over here, where you have a very different statute that has been focused on this concept of inducement. And I would note, you know, every single one of this Court's cases that involved A2 has always had a debtor who is using fraud to induce the creditor to part with something. That's the way this statute had been understood up until the Seventh Circuit's decision came along and kind of had this new idea that you could get at fraudulent conveyance through this statute. Before that, it was pretty commonly understood that what A2 was about, that differentiated it from other provisions, was that it was about fraudulent inducement. And that's the ultimate problem here. They may have a debt. They may have a debt that even involves actual fraud, but they don't have a debt for anything with which Petitioner was ever fraudulently induced to part, resulting in my client obtaining anything by the kind of fraud that counts under Section 523A2. If there are no further questions. Roberts. Thank you, counsel. Mr. Zawiercki, you have four minutes remaining. Thank you. A veterinarian's office with a sign saying that the veterinarian treats dogs, cats, or domesticated animals treats more than just dogs and cats. Surely that office will also treat guinea pigs and hamsters. And so the domesticated animals phrase does have something in common with dogs and cats, just as fraudulent transfers has something in common with false pretenses and false representations. These are all schemes to cheat creditors. But by adding or actual fraud, Congress was expanding upon the preexisting terms, expanding upon dogs and cats to cover something additional. Respondent does not have any theory for what Congress was doing through this language to expand upon the previous terms. With respect to false representation, courts had unanimously interpreted false representations to refer to the tort of deceit. In his brief, Respondent equates false representations with the tort of deceit. Even if false representations might have been understood as something else, adding or actual fraud would not narrow false representations to exclude unintentional representations. It would at best simply show that you could also have a discharge bar for an intentional misrepresentation. With respect to Neel, Neel has to be understood in light of what was at issue in that case. The fundamental premise of Neel was that some forms of fraudulent transfers are fraud under the predecessor of Section 523a2a. And so the only reason that the Court drew a line there between intentional and unintentional participation was on the premise that if the participation had been intentional, that would have been nondischargeable fraud. With respect to the statutory text here, nothing about the statute talks about inducing a creditor to part with anything. It simply talks about obtaining money by fraud. And for the reasons that I explained earlier, a transferee commits fraud and therefore incurs a new debt for which he is liable if he knowingly participates in a fraudulent transfer. Ms. Murphy made the point that there are – suggested that there is something anomalous about allowing creditors to pursue a fraudulent transfer remedy for the benefit of an individual creditor. There is nothing anomalous about that. State fraudulent transfer laws exist outside of bankruptcy, and so before the bankruptcy state takes effect, it is essentially a free-for-all, where creditors can pursue their rights under State fraudulent transfer laws. And we treat – we treat in our veterinarian clinic domestic animals, your domestic animals, or your household – domestic animals, your dog – your favorite friends or your domestic pets, you see. Domestic pets is meant to say which domestic animals? Domestic animals, dogs, cats, or household pets. Domestic animals seems to cover the whole thing. They're saying, or, it's like, I eat household pets. This is tough. Well, not for you. It's good for you, this word, or. I grant you. I've had a horrible time trying to find an example. But it could be. It means, i.e., she's saying it means, i.e., household pets. Not when Congress adds or domestic animals as a specific amendment. That has to be given some effect. Lastly, A6 doesn't solve this problem. If A6 simply covered any intentional wrong, it would simply subsume all of the discharge bars. Any intentional misrepresentation would fall within A6. A6 has to be given a narrower construction in order to differentiate it from the other bars. Moreover, A6 doesn't apply in Chapter 13. And particularly in 2005, when Congress reformed Chapter 13 to crack down on fraud, it did not mean to allow the sort of scheme that went on in this case or the sort of fraudulent transfer that Justice Breyer hypothesized to lead to a discharge. Sotomayor, are you limiting actual frauds to just fraudulent conveyances? Are there other deceptive schemes that you would include? There are. I think the heartland usage of actual fraud at common law, most commonly it did refer to fraudulent transfers to hinder creditors. There were also other types of conveyances, conveyances to defeat a deforestation spouse's interest, for example, the devastavit in Neal to diminish an estate. We also give an example in our brief of undue influence. These are also forms of actual fraud, but the heartland of it is fraudulent conveyances. Thank you, counsel. The case is submitted.